*In re* JOHN DAVIS.

No. 11,757. (61 Pac. 809.)

| 62 | 231 |
| 64 | 844 |

| 62 | 231 |
| f79 | 211 |
| 79 | 801 |

COURT OF COMMON PLEAS FOR CRAWFORD AND CHEROKEE COUNTIES—*Not Legally Authorized.* The language of section 27 of chapter 16 of the Laws of 1898, an act creating a court of common pleas for the counties of Crawford and Cherokee, that "if a majority of the electors in each of the counties . . . voting at such election shall favor the creation and establishment of said court," etc., the court shall be established, does not mean a majority in each county of the electors who voted on the proposition to establish the court; but it means a majority of all the electors in each county who voted at the election on any or all candidacies for office or propositions submitted; and, inasmuch as such majority in Crawford county did not vote in favor of the establishment of the court, it was never legally authorized.

Original proceeding in *habeas corpus.* Opinion filed July 7, 1900. Petitioner discharged.

*Arthur Fuller*, and *L. H. Phillips*, for petitioner.

*B. S. Gaitskill*, county attorney, and *Morris Cliggitt*, for respondent.

The opinion of the court was delivered by

DOSTER, C. J.: This is an original proceeding in *habeas corpus*, and it involves a construction of certain provisions of chapter 16 of the Laws of 1898, an act creating the court of common pleas of Cherokee and Crawford counties, and defining its jurisdiction. The petitioner, John Davis, was convicted of a felony in that court and by its judgment was ordered imprisoned in the state penitentiary. He alleges that the act creating the court is unconstitutional, in that it contains an abnegation of the legislative power to ordain the taking effect of itself as a law, and the delegation of such power to the electors to determine whether it shall have an existence as a law; and, as an alternative proposition, he alleges that if the act of the legislature was not an abnegation of its power and a delegation of it to the people, but was in the nature of a privilege to accept or reject the benefits of an enacted law, the electors did not, as provided by the act, vote to accept the benefits of its provisions, and, therefore, that the court sentencing him never rightfully came into existence.

The portions of the act material to notice are as follows:

"SECTION 1. That a new court of record be and such court is hereby created and established for the counties of Cherokee and Crawford, to be called the court of common pleas. Said court shall have one presiding judge, whose style of office shall be 'judge of the court of common pleas'; and said court shall have two clerks, and style of office shall be 'clerk of the court of common pleas'; provided, however, that the majority of the qualified electors of said counties shall vote in favor thereof as hereinafter provided."

"SEC. 10. The governor shall, immediately upon the passage of the act, and the approval of the same

by the qualified electors of Cherokee and Crawford counties as hereinafter provided, appoint and commission a judge for the court hereby created, who shall be a resident member of the bar of Cherokee or Crawford counties, Kansas, whose term of office shall commence with the date of his commission and who shall hold his office until his successor is elected and qualified."

"Sec. 12.  The governor shall, upon the passage of this act and the approval of the same by the qualified electors of Cherokee and Crawford counties as hereinafter provided, appoint and commission for the court hereby created, two clerks, one for the county of Cherokee and one for the county of Crawford, whose terms of office shall commence with the date of their said appointments, and who shall hold their office until their successors are duly elected and qualified."

"Sec. 26.  At the general election to be held on the Tuesday next succeding the first Monday in November, 1899, and each four years thereafter, there shall be elected a judge of said court of common pleas, whose term of office shall be four years from the first Monday of January following his election, or until his successor is duly elected and qualified; and there shall be elected in each of said Cherokee and Crawford counties a clerk of said court for said county at the general election to be held on the Tuesday next succeeding the first Monday in November, 1899, and each two years thereafter.  .  .  .  .

"Sec. 27.  That the board of county commissioners of Cherokee and Crawford counties shall submit to a vote of the qualified electors of said counties, at the next general election, or at a special election to be called and held in said counties for that purpose, the question of establishing a new court of record for said counties, to be called the court of common pleas. The board of county commissioners of Crawford county shall meet in joint session with the board of county commissioners of Cherokee county at the commissioners' room at the court-house at Columbus, Cherokee county, Kansas, on or before the 23d day of January, 1899, for the purpose of determining whether or not

*In re* Davis.

a special election shall be called in said counties of Cherokee and Crawford for the purpose of submitting to the qualified electors thereof the question of whether or not the court of common pleas of said counties shall be established. If said boards of commissioners of said counties shall, by a majority vote thereof, in joint session, decide to call special election to vote on said proposition, it shall be the duty of the county commissioners of each of the said counties to call a special election to be held on the same day in each of the said counties, not more than forty-five days after the date of said joint session, and of which special election thirty days' notice shall be given; said election to be held as provided by law for the holding of special elections in this state. The ballots to be furnished and used at said special election shall bear the printed words and characters thus:

| "Shall a court of common pleas be established for Cherokee and Crawford counties, Kansas? | YES. | |
| | NO. | |

"Each elector shall designate his vote by a cross in the blank after the word 'Yes' or 'No' as he desires to vote for or against said proposition. Said election shall be conducted, and the ballots cast thereat shall be counted and returned, as provided by law in other elections, and shall be canvassed at a joint session of the board of commissioners of Crawford and Cherokee counties, to be held in the city of Columbus on the Friday next succeeding the date upon which said election shall be held. The county clerks of said counties shall immediately certify the result of said election to the governor of the state of Kansas, who, if a majority of the electors in each of the counties of Cherokee and Crawford voting at such election shall favor the creation and establishment of said court of common pleas, shall immediately appoint a judge and clerks for said court as hereinbefore provided in this act."

The boards of county commissioners of the two counties did not call a special election for the purpose

*In re* Davis.

of submitting to the electors the question of the establishment of the court, as they were authorized to do by section 27 above quoted. The vote on that question was therefore taken at the general election in November, 1899. At that election a majority of the voters of Cherokee county voting at such election voted in favor of the establishment of the court, but a majority of the electors of Crawford county voting at such election did not vote in favor of its establishment. In the last-named county 7013 electors voted at the election. Out of this number 3095, or 412 less than a majority, voted in favor of the establishment of the court, and 2940 voted against it. It will be observed, therefore, that while a majority of those who voted in Crawford county on the proposition voted in favor of it, yet, adding together all who voted both for and against it, there were 978 who voted at the election for candidates for office and on other propositions who did not vote at all on the proposition to establish the court. Therefore, the proposition to establish the court did not receive the actual assent of a majority of the electors in Crawford county voting at such election. However, as authorized by section 26 of the act, the electors of the two counties voted for a judge, and for clerks for each of said counties. The result of the election was certified to the governor, who, in accordance with section 10 and the closing sentence of section 27, made an appointment to the office of judge for the time preceding the commencement of the full term provided for said office.

As before stated, the validity of the act is attacked on the ground that section 27 contains an abnegation of the legislative power to will and ordain the law, and an attempted delegation of it to others than the constituted authority. This raises an interesting

question, and one that is becoming important in this state, in view of the frequent reference by the legislature to the people of the question whether they will accept the benefits of statutory provisions enacted in their behalf. The question was submitted to us in *In re Hendricks*, 60 Kan. 796, 57 Pac. 965, but it did not become either necessary or proper for us to undertake its determination in that case; nor, in the view we have of this case, does it now become either necessary or proper for us to undertake to determine it. Whether the statute now under consideration furnishes an instance of an attempted enactment of a law by popular vote, which the courts as a rule condemn, or furnishes an instance of the acceptance by popular vote of the provisions of a legislatively enacted law, which the courts as a rule approve, does not become necessary for us to consider. We may admit, as contended by the respondent, that the act in question is an instance of the latter kind, and that it is, therefore, constitutionally valid.

The question still remains, Did the electors of the judicial district provided for vote, within the terms of the act, to accept the benefit of its provisions and avail themselves of the opportunity to establish the court? It would seem, from the closing sentence of section 27, that the taking effect of the act, or, as the respondent prefers to express it, the acceptance of the benefits of the act, was conditioned upon "a majority of the electors in each of the counties of Cherokee and Crawford *voting at such election*" in favor of the creation and establishment of said court. Only in that contingency could the governor appoint a judge and clerks, *ad interim*, for the court. So, also, by section 1 of the act, the creation and establishment of the court was conditioned upon a proviso "that the ma-

*In re* Davis.

jority of the qualified electors of said counties shall vote in favor thereof as hereinafter provided." What is meant by the clause "as hereinafter provided," will presently receive our attention. For the moment we will assume that it means, as provided by section 27, a favorable vote by a majority in each county voting at the election. Hence, the establishment of the court being conditioned upon the vote of "a majority of the electors in each of the counties of Cherokee and Crawford voting at such election," the question occurs, What is meant by the words "a majority voting at such election"? We feel clear that they mean a majority of all those who voted at the election, whether they voted on the proposition to establish the court or did not.

The language of the act is plain. There is scarcely occasion for the application to it of rules of construction. Electors voting at an election at which two or more propositions are submitted, or at which candidates for two or more offices are voted for, are those who vote for or against any one of the propositions, or for or against any of the candidates, whether they vote for or against all of such propositions and candidates, or only for or against a part of them. The total number of such electors who voted at such election, whether they voted on all of the propositions submitted, or for or against all of the candidates, are "the electors voting at such election." Hence, in order to the establishment of the court, the statute required a majority of the electors voting at such election in each of the counties to favor its establishment. Inasmuch as a majority of the electors voting at the election in Crawford county upon the various propositions and candidates submitted to them did not vote in favor of the establishment of the court, the propo-

sition to establish it failed of the requisite approval. Upon the question of the construction of statutes phrased like the one under consideration, the case of _High School v. Commissioners_, 61 Kan. 796, 60 Pac. 1057, is directly in point.

Counsel for respondent contend that the particular language of the act under consideration brings the case within the principle announced in _Comm'rs of Marion Co. v. Winkley_, 29 Kan. 36, and _The State, ex rel., v. Echols_, 41 Kan. 1, 20 Pac. 523. The case first cited involved the consideration of an act providing for the taking of a vote on the question of the payment of a bounty for the growing of hedges. The statute (ch. 91, Laws 1871) read : ''If a majority of the votes cast are for the bounty they shall declare said law to be in full force and effect.'' The vote on the hedge-bounty proposition was taken at a general election at which candidates for office were. voted for. A majority of all who voted at the election did not vote in favor of the bounty proposition, but a majority of those who voted on the bounty proposition voted in favor of it. Upon a consideration of the meaning of the statute, it was held that the proposition was carried. The court rested the decision in part upon the ground that ''the electors who were present at the polls, and, while voting for township officers, did not vote upon the bounty propositions, are presumed to assent to the expressed will of the majority of those voting thereon.''

In _The State, ex rel., v. Echols_, supra, a similar vote under a similar statute at a general election was considered. The statute read : ''After said election the ballots on said question shall be canvassed in the same manner as in the election for county officers, and if a majority of all the votes cast shall be in favor of es-

*In re* Davis.

tablishing such high school," etc., the school shall be established.   In the last-cited case, *Comm'rs of Marion Co. v. Winkley,* supra, was regarded as a controlling authority and was followed.   The decisions of these cases were correct, but the writer, speaking for himself alone, thinks the reasoning in them unsound, and, likewise, unnecessary, to uphold the decisions. What was meant in each of the statutes by the words, "majority of the votes cast," was majority cast on the particular proposition submitted.   The contexts of the statutes in each of the cases and the particular language under consideration showed this, and it was unnecessary to indulge the presumption that those who did not vote at all on the question were presumed to assent to the will of the majority, or, in other words, to count those who did not vote at all on the proposition as voting in favor of it.

Counsel for the respondent quote from the closing sentence of section 27 of the act under consideration the provision, "if a majority of the electors in each of the counties voting at such election shall *favor* the creation and establishment of said court," etc., and, emphasizing the word "favor," contend that its use constitutes a legislative adoption of the rule of the former cases of *Comm'rs of Marion Co. v. Winkley,* supra, and *The State, ex rel., v. Echols,* supra, that those who do not vote on a proposition are presumed to assent to the will of a majority of those who do vote on it.   We cannot concur in this reasoning. The way for an elector to signify his favor for a candidate for office, or for a proposition to be voted on, is to cast a ballot for him or for it.   When the statute speaks of an elector favoring a candidate or a proposition, it means favoring him or it by casting a ballot for him or it.   It implies the ascertainment of his

favor by means of the authorized and only permissible and recognizable evidence of it, to wit, a ballot; and it does not mean the ascertainment of his favor by presuming his agreement to the action of the majority of such of his fellows as choose to express themselves. He may be bound in some cases by the action of the majority by failing to dissent from it, but not where the law, in order to bind him, requires the expressed assent of a. majority of the whole of an ascertainable number, which is the case under the law we are considering.

It is also contended by counsel for respondent that, if their views as above stated should be regarded as unsound, the result of the vote must nevertheless be held favorable to the establishment of the court because the language of section 27, which we have been considering, relates only to the special election authorized by it, and the ascertainment of the result and the contingent appointment of the judge and clerks to follow thereafter. It is argued that section 27 only furnishes the rule for a special election, and, inasmuch as no special election was called, but the vote was taken at a general election, the statute appropriates those general provisions of law elsewhere found for ascertaining and declaring the result. The statute is not as clear as it should be, but upon this matter we feel convinced that counsel are also mistaken. It is true that the provisions of section 27 relate to a special election, but other sections of the act, instead of appropriating the provisions of the general election law for the ascertainment of the result of a vote taken at a general election held under such act, appropriate the provisions of this same section 27 for the ascertainment of such result. Section 1 declares that the court shall be established in the event "that the

*In re* Davis.

majority of the qualified electors of said counties shall vote in favor thereof *as hereinafter provided.*" Section 10 requires the governor to appoint a judge upon the approval of the act "by the qualified electors, . . . as *hereinafter provided,*" and section 12 requires him, upon the approval of the act, "by the qualified electors, . . . *as hereinafter provided,*" to appoint clerks for the court in the two counties named. The clause, "as hereinafter provided," which occurs in these sections of the statute, refers to the thereafter provided terms and conditions of section 27 ; hence, for the ascertainment of the result of the general election, the statute appropriates the special provisions relating to the special election. These provisions govern, and they did not authorize the establishment of the court, except in the contingency of an affirmative vote favoring its establishment, by a majority of all the electors, in each of the counties, voting at the election, upon the various propositions and candidacies thereat submitted. We would like to be able to reach a different conclusion. We are reluctantly forced to the one we announce, but the law is plain, and by that only can our action be governed. There is no legally established court of common pleas for the counties of Cherokee and Crawford.

The prayer of the petitioner is granted and he is ordered discharged from custody.