*In re* JOHN D. NORTON.

**No. 12,836.** (68 Pac. 639.)

SYLLABUS BY THE COURT.

1. JURISDICTION—*De Facto Court.* A court not created by the constitution or by an act of the legislature has no legal existence and, therefore, no power to adjudge one guilty of a crime and sentence him to imprisonment.

2. ———— *No Color of Office.* The appointment or election to an office that has no legal existence gives no color of office to the occupant or color of existence to the office.

3. ———— *Habeas Corpus.* One deprived of his liberty under process issued on final judgment by a court which he claims had no legal existence may maintain *habeas corpus* to test such jurisdiction.

4. ———— *Competent Jurisdiction Defined.* A court of competent jurisdiction, within the meaning of section 671 of the civil code (Gen. Stat. 1901, § 5167), is one created by the constitution or by an act of the legislature which has been given jurisdiction over the subject-matter and has acquired jurisdiction of the parties.

Original proceeding in *habeas corpus.* Opinion filed April 5, 1902. *In banc.* Petitioner discharged.

*Blue & Glasse,* for petitioner.

*A. A. Godard,* attorney-general, and *J. N. Dunbar,* county attorney, for respondent.

The opinion of the court was delivered by

GREENE, J.: This is an original proceeding in *habeas corpus.* On the 30th day of June, 1900, the petitioner, John D. Norton, was convicted in the court of common pleas of Cherokee and Crawford counties of murder in the second degree, and sentenced to imprisonment at hard labor in the state penitentiary for a term of twenty years. Norton presents his petition for a writ of *habeas corpus,* alleging

*In re* Norton.

that said court had no legal existence at the time he was convicted and sentenced, and, therefore, that his imprisonment is illegal and he ought of right to be discharged therefrom.

The court of common pleas of Cherokee and Crawford counties was created by chapter 16 of the Laws of 1898, passed at the special session. Section 1 provides :

"That a new court of record be and such court is hereby created and established for the counties of Cherokee and Crawford, to be called the court of common pleas. Said court shall have one presiding judge, whose style of office shall be 'judge of the court of common pleas' ; and said court shall have two clerks, and style of office shall be 'clerk of the court of common pleas' ; provided, however, that the majority of the qualified electors of said counties shall vote in favor thereof as hereinafter provided."

The act provides for the calling of an election in each of said counties, at which the question of the creation and establishment of said court shall be submitted to the qualified electors thereof, and for the canvass of the votes and the certification of the result to the governor by the county clerks of said counties. It also provides for the appointment by the governor of a judge for such court, provided a majority of the electors voting at such election in each of said counties shall vote in favor of the creation and establishment of such court. It also defines the jurisdiction of the court, the term of office and salary of the judge, provides for clerks and the terms of court, and makes all other necessary provisions for carrying out the purpose of the act, in the event the court should be established by a vote of the electors of said counties.

An election was held at which the proposition to establish such court was submitted to the qualified

*In re* Norton.

electors.   The respective boards of county commis-
sioners of the two counties met thereafter, canvassed
the returns, and caused the result to be certified to the
governor, who thereupon appointed a judge of said
court.   The person thus appointed qualified and acted
as such judge until his successor, who was elected
at the general election in November, 1899, qualified
and took possession of the office.   Thereafter such
successor held court in the several counties, tried
causes, and transacted all other business coming within
the jurisdiction of the court as contemplated by the
act, and in June, 1900, tried, convicted and sentenced
the petitioner herein, as alleged in his petition.

Notwithstanding the commissioners, from a canvass
of the vote, and the governor, from the returns thereof
certified to him, determined that the proposition to
create and establish such court had, by a majority
vote of the electors voting at such election, been
adopted and such court created, it is now conceded by
the respondent that such was not the fact; that at the
election held for such purpose in the county of Craw-
ford there were 7013 electors voted ; that there were
3095 votes for the creation and establishment of such
court, which were 412 less than a majority of the
votes cast.

The question whether such court was legally estab-
lished was before us in *In re Davis*, 62 Kan. 231, 61
Pac. 809, where it was held that the proposition must
be accepted by a majority of all the electors voting at
the election in each of said counties, and that, as a
majority of the electors voting in Crawford county did
not vote in favor of establishing such court, there was
no such court created.

While it is admitted by the respondent that the
court of common pleas had no legal existence, it is

*In re* Norton.

contended that it was recognized by the chief executive in appointing a judge therefor, by the sheriffs of both counties, who served its processes, and by the people, who elected a judge in 1899 to preside over it, and as such court it tried many cases, and was in operation for several months, and was, therefore, a *de facto* court, and its judgment conclusive and unimpeachable. The argument is that the same reasoning and necessity that demand and obtain recognition by courts of the acts of *de facto* officers demand in this instance the recognition of the court of common pleas as a *de facto* court. We cannot accede to this. While there is some authority for this conclusion, and while cases may arise where it would be proper so to hold, yet mere form or color of an office should not be permitted to stand between a citizen and his liberty. There must be a reality in the existence of the court that undertakes to deprive one of his liberty. In all cases where the acts of *de facto* officers have been upheld, there existed a *de jure* office. The strongest reasoning why the acts of *de facto* officers are sustained is that the office is created by the public and put in operation as part of a system of organized society, and a continued administration of the office becomes necessary to the proper adjustment of its affairs and to the perpetuity of the system. This reasoning loses force when we undertake to apply it to a *de facto* office. Such office, not having been created by the public, and not having been adopted into the organized system, never becomes a part of it, and its displacement does not disturb the harmony of the organization. The act attempting to create the court of common pleas was never a consummated reality. Its existence as a completed act depended wholly on a precedent condition — the affirmative vote of the electors of the counties to be affected.

The contention here made was made in *Norton v. Shelby County*, 118 U. S. 425, 441, 6 Sup. Ct. 1121, 1125, 30 L. Ed. 178. The court, speaking through Mr. Justice Field, said:

"But it is contended that if the act creating the board was void, and the commissioners were not officers *de jure*, they were nevertheless officers *de facto*, and that the acts of the board as a *de facto* court are binding upon the county. This contention is met by the fact that there can be no officer, either *de jure* or *de facto*, if there be no office to fill. As the act attempting to create the office of commissioner never became a law, the office never came into existence. Some persons pretended that they held the office, but the law never recognized their pretensions, nor did the supreme court of the state. Whenever such pretensions were considered in that court, they were declared to be without any legal foundation, and the commissioners were held to be usurpers."

This reasoning, in addition to the very great esteem we have for its author, convinces us; it is more rational than the contrary doctrine.

The result of the election as found by the canvassing boards, and as certified to the governor, showed plainly and conclusively that the majority of the qualified electors voting at said election in each of said counties had not voted in favor of the establishment of said court. There had been, therefore, no court created at the time the executive made the appointment, nor was there any such condition as would give color to its existence. It was as if no act had been passed contemplating the creation of such a court. The want of power in the court of common pleas to try the petitioner does not arise from any latent defect in the law creating or conferring jurisdiction, which, notwithstanding, might have given color to its existence as a court, but because the

*In re* Norton.

proposition submitted by the legislature to the elect-
ors to establish such court was by such electors re-
jected, and this in the most public manner.   The
appointment or election of one to an office that has
no legal existence gives no color of existence to the
office, or color of authority to the person so appointed
or elected.   In this instance the court was not estab-
lished; there was no office created to be filled by ap-
pointment or election, and all acts performed by such
pretended court are void.

The second contention on the part of respondent is
that the legality of the court which tried and convicted
the petitioner cannot be challenged or drawn in ques-
tion by *habeas corpus*.   In support of this contention,
we are referred to the cases of *In re Short, Petitioner*,
47 Kan. 250, 253, 27 Pac. 1005 ; *In re Rabbitt, Petitioner*,
47 id. 382, 27 Pac. 1006.   It will be observed that in
those cases the existence of the courts was not ques-
tioned.   It was not denied in the case of *In re Short*
that the office of district judge existed ; that the court
was properly organized ; that the incumbent was the
judge of the court, or that the territory in which the
court was held was within the jurisdiction of the court.
The questions decided are that "where a public or-
ganization, of a corporate or *quasi*-corporate character,
has an existence in fact, and is acting under color of
law, and its existence is not questioned by the state,
its existence cannot be collaterally drawn in question
by private parties." (*In re Short, Petitioner*, 47 Kan.
250, 253, 27 Pac. 1005, 1006.)   To this rule we find
no exceptions in the authorities.   The state organizes
counties and townships, that through their assistance
it may better administer public affairs, and where such
organizations are in operation and recognized by the
state, an individual may not in a proceeding collater-

ally attack such organization. To adopt the rule contended for by the petitioners in those cases would disrupt all established procedure in civil as well as criminal litigations, and would in a measure defeat the purpose intended to be accomplished by the state in the organization of its assistant municipalities. If, in every civil or criminal litigation, the litigant could inject into the lawsuit the legality or illegality of the public organization in which the court was being held, a litigation which should be speedily ended would become interminable. We think the principles announced in those cases are sound, but have no application here. The petitioner maintains that the court of common pleas never had any legal existence and no power to try or sentence him, and that for these reasons the process under which he is detained is illegal.

The remaining question is, Can this court, on a return to a writ of *habeas corpus,* inquire into the jurisdiction of the court under whose process the defendant is held? This must be answered in the affirmative, unless a restriction may be found in the statute. Section 660 of the civil code (Gen. Stat. 1901, § 5156) provides that "every person restrained of his liberty under any pretense whatever may prosecute a writ of *habeas corpus* to inquire into the cause of the restraint, and shall be delivered therefrom when illegal." This is but the reenactment of the common law. The only restriction is found in section 671 (Gen. Stat. 1901, § 5167), which reads:

"No court or judge shall inquire into the legality of any judgment or process whereby the party is in custody, or discharge him when the term of commitment has not expired, in either of the cases following: First, upon process issued by any court or judge of the United States, or where such court or judge has

exclusive jurisdiction; or second, upon any process issued on any final judgment of a court of competent jurisdiction."

It will be observed that this limitation does not preclude the court from inquiring into the validity of the process, or determining whether the court whose judgment is in question was a court of competent jurisdiction.

It was held in *In re Rolfs, Petitioner*, 30 Kan. 758, 1 Pac. 523, and *Franklin v. Westfall*, 27 Kan. 614, that on a return of a writ of *habeas corpus* the court could investigate the jurisdiction of the court under whose commitment the petitioner was held. To the same effect are the decisions in *State, ex rel., v. Billings*, 55 Minn. 467, 57 N. W. 206, 794; *Ex parte Page*, 49 Mo. 291, and in *People, ex rel. Tweed, v. Liscomb*, 60 N. Y. 559, 19 Am. Rep. 211.

Was the court of common pleas of Cherokee and Crawford counties a court of competent jurisdiction? We suppose it will be conceded that a court of competent jurisdiction is one provided for in the constitution or created by the legislature, and having jurisdiction of the subject-matter and of the person. In *People, ex rel. Tweed, v. Liscomb*, 3 Hun, 769, it was said that a "competent tribunal" meant a "tribunal having jurisdiction of the subject-matter and the person"; in *Babbitt v. Doe*, 4 Ind. 757, it is said that the term "competent jurisdiction, in its usual signification, embraces the person as well as the cause"; and in the notes to the McLeod case, 3 Hill, 665, it was said that "if there was no legal power to render the judgment or decree or issue the process, there was no competent court, and, consequently, no judgment or process."

The court that tried the petitioner had no legal existence; it was not, therefore, a court of competent

jurisdiction, or, in fact, of any jurisdiction, and had no power to try or sentence him.

The process under which he is now incarcerated is illegal and void, and he is discharged from the commitment under which he is now being held, and the warden of the state penitentiary is instructed to deliver him to the sheriff of Cherokee county, provided he makes demand on or before the 1st day of May, 1902.

All the Justices concurring.