(122 N. W. 245. )

---

THE STATE OF NORTH DAKOTA ON THE RELATION OF NEHEMIAH DAVIS, AS COUNTY JUDGE OF WARD COUNTY, NORTH DAKOTA, v. J. W. FABRICK, AS AUDITOR OF WARD COUNTY, NORTH DAKOTA.

Opinion filed January 16, 1909.

Rehearing denied May 14, 1909.

**County Courts — Increased Jurisdiction — Election — "Majority Vote."**

1. Section 111 of the constitution provides that county courts shall have jurisdiction of certain civil and criminal causes "whenever the voters of any county having a population of two thousand or over shall decide by a majority vote that they desire the jurisdiction of that court increased." *Held,* that the words "majority vote" mean a majority of all votes cast on the question of increased jurisdiction, and not a majority of all the votes cast at the election.

**County Judges — Salaries.**

2. Chapter 68, page 81, Laws 1899, section 6615, Rev. Codes 1899, and chapter 78, page 160, Laws 1905, construed, and *held* to limit the maximum salary of county judges in counties having increased jurisdiction to the sum of $2,500.

Appeal from District Court, Ward county; *Goss, J.*

Mandamus by the State, on the relation of Nehemiah Davis, as County Judge of Ward county, against J. W. Fabrick, as Auditor of that county. Judgment for defendant, and relator appeals.

Affirmed.

*John E. Greene,* for appellant.

*George A. McGee,* State's Attorney, and *Francis J. Murphy,* for the State, attorneys for respondent.

MORGAN, C. J. The relator seeks to compel the respondent, the county auditor of Ward county, by a writ of mandamus, to issue to him a warrant for salary as county judge of said county. He was elected to that office in 1904, and has held the same by successive elections ever since. He claims that there is due him the sum of $3,800, over and above all sums that have been paid to him for salary. He claims that said sum is due him by reason of the alleged fact that the county court of Ward county is one having jurisdiction of certain  civil and criminal causes by virtue of an election in said county whereby such increased jurisdiction was granted to that court. The district court refused to grant the writ and dismissed the proceeding. In this court the respondent advances two objections to the granting of the relator's contention, which are as follows: (1) That the county court of Ward county is not a court having jurisdiction over any matters save probate and guardianship matters. (2) That the relator has been paid all sums due him as such county judge, conceding that increased jurisdiction has been conferred upon said court. The validity of the first objection rests upon the construction to be given to section 111 of the Constitution, and the validity of the second objection rests upon the construction to be given to the various legislative enactments in force during relator's incumbency of said office, which enactments will be herein set forth in detail.

Pursuant to chapter 60, page 70, Laws 1903, the question was submitted to the voters of Ward county at the general election of 1904 whether that court should have jurisdiction over civil and criminal causes, and at such election county and state officers were also voted for. The proposition to increase the jurisdiction of the county court did not receive a majority of all the votes cast at that election for certain officers; but it did receive a majority of all the votes cast at said election upon the proposition whether the jurisdiction of said court should be increased. Section 111 of the Constitution, which authorizes the submission of that question to the voters of the county, is as follows, so far as material: It provides that said court shall have jurisdiction in probate, testamentary, and guardianship matters, "provided, that whenever the voters of any county  *  *  *  shall decide by a majority vote that they desire

the jurisdiction of said court increased above that limited by this Constitution, * * * and in case it is decided by the voters of any county to so increase the jurisdiction of said county court. * * * In case the voters of any county decide to increase the jurisdiction of said county courts. * * *" It is apparent that the issue on this question must be determined by the meaning to be given to the words "whenever the voters of any county * * * shall decide by a majority vote." As ordinarily understood, do the words "a majority of the voters of any county" mean a majority of the votes cast at that election for any purpose, or a majority of the votes cast upon the precise proposition to be submitted under that section of the Constitution?

The proposition in question was submitted to a vote at a general election, although the county commissioners could lawfully have submitted it to a vote at a special election called for that purpose. The Legislature empowered the commissioners to submit the question at a special or at a general election. The question whether the proposition to increase the jurisdiction of the county court was legally adopted should be determined from the language of the section without regard to the question whether it was submitted at a special or general election, inasmuch as the language of the section is general and contains nothing to indicate that a different rule should be applied in canvassing the vote depending upon whether the election is special or general. It is a principle applicable to such questions that a majority of the votes cast upon a submitted proposition is sufficient to carry it, unless the constitutional or statutory provision under which the proposition is submitted clearly shows that it was the intention that a different rule or principle should apply. As said in State v. Langlie, 5 N. D. 594, 67 N. W. 958, 32 L. R. A. 723: "The general policy of the American people is to test the sufficiency of any vote by the vote on that particular question, and not by the vote on some other question. Unless the language is free from doubt, we have no right to spell out of the statute by any far-fetched inference a purpose to depart from this general policy." That was a case involving the construction of the statute relating to the relocation of county seats. Before the change became effective, "two-thirds of the votes polled" must have been cast in favor of one place. This court construed the provision to mean that only two-thirds of the votes cast upon the proposition was necessary to secure the removal of the county seat, and not two-

thirds of all the votes cast at the election. In that case the court said: "The plain meaning of the statute is that the place having two-thirds of the votes polled on the particular question of relocation shall be the county seat. There is nothing in the statute indicating that to work a change of the county seat any one place must receive a vote of two-thirds of all the voters of the county. Ample authority sustains our decision. * * * When a majority of the electors is spoken of, the highest number of votes cast at the election must furnish the standard for determining whether the particular measure which must have such a majority has been carried."

Although the language of the statute construed in that case is not identical with the section of the Constitution under consideration, we think that case decisive of the case at bar. Section 111 of the Constitution applies only to elections on the question of increasing the jurisdiction of county courts. The words by "a majority vote" mean more than one-half of the voters voting upon that question. If it was the intention that a majority of the electors of the county should vote in favor of increased jurisdiction, language expressive of that intention could easily have been found. The words "majority vote" clearly imply that there are votes for and against the proposition. The language clearly indicates a purpose to test the question whether the proposition covered by the section has carried by the votes cast on that question alone, and not by the number of votes upon some other question, or for some candidate. We think it would be an unnatural and strained construction to say that the words "majority vote," as used in said section 111, mean a majority of the votes on some question not referred to in that section at all. Adhering to the principle that a majority of the voters voting on a particular question governs, unless a different construction is forced by the language of the Code or Constitution, we are convinced that a majority vote on the question covered by said section 111 is sufficient. The section refers to a special subject or matter. The general words of the section must receive the construction limiting their meaning to the subject to which the section refers. The words "voters" and "majority vote," as used in that section, should be limited under that principle to refer only to the voters voting on the subject-matter of the section. We think this construction is emphasized as proper by the legislative enactments passed to carry the provisions of said section 111 into effect. The Legislature of 1903 provided for the submission of the question

of increased jurisdiction of county courts to the "voters of the county," and provided that the same could be done at either general or special elections at the discretion of the county commissioners. This chapter is silent as to the manner of voting or canvassing the vote upon the question. Hence the same must be governed by the existing statute covering that question, being section 491 of the Revised Codes of 1899. This section provides for "votes for" and for "votes against" all special questions submitted thereunder. In other words, the affirmative and negative votes are to be counted. If it was intended that a majority of all the votes cast at the election for any measure or candidate must be in favor of increased jurisdiction, it is not apparent, and no plausible reason exists why the negative votes must be counted at all. Besides the cases cited with approval in State v. Langlie, supra, the following authorities sustain the construction adopted by us as the proper one under similar enactments: South Bend v. Lewis, 138 Ind. 512, 37 N. E. 986; State v. Eckols, 41 Kan. 1, 20 Pac. 523; In re Davis, 62 Kan. 231, 61 Pac. 809; Smith v. Proctor, 130 N. Y. 319, 29 N. E. 312, 14 L. R. A. 403; State v. Pool, 20 Or. 150, 25 Pac. 375; Walker v. Olswood, 68 Md. 146, 11 Atl. 711; Howland v. Commissioners, 109 Cal. 152, 4 Pac. 864.

We will now consider the salary question. That question involves the construction of the several statutes fixing the salary of county judges in counties having increased jurisdiction, and the construction of other statutes fixing the salary of county judges in counties not having increased jurisdiction. The issue between the parties is whether county judges in counties having increased jurisdiction are entitled to the salary provided for by section 6615 Rev. Codes 1899, and in addition thereto the salary provided for by chapter 68, page 81, Laws 1899, fixing the salary of county judges in counties not having increased jurisdiction. Chapter 62, p. 72, Laws 1899, being amendatory of section 6615, Rev. Codes 1895, reads as follows: "As compensation for their services under this act, there shall be allowed and paid to judges of county courts having civil and criminal jurisdiction (in all counties having a population of 18,-000 inhabitants) the sum of two thousand and five hundred dollars ($2,500.00) per annum, and in counties having less than 18,000 inhabitants the sum of $1,000 per annum, payable monthly by such county, which sums cover all services under the prohibition law."

This section is the same as section 6615, Rev. Codes 1899. Chapter 68, p. 81, Laws 1899, reads as follows: "As compensation for his services, the county judge shall be paid in all counties an annual salary based on the assessed valuation as follows: In counties having a valuation of  *  *.  *  over four million, five hundred thousand dollars, and under seven million dollars, fourteen hundred dollars,  *  *  *  and no more for his personal services; provided that the salary of county judge in counties having increased jurisdiction shall not be affected by the provisions of this act." These two sections govern as to the salary of appellant for the years 1905 and 1906 and a part of the year 1907. The appellant claims that he is entitled to a salary of $1,400 during these years under said chapter 68, Laws of 1899, and, in addition thereto, a salary of $2,500 under said section 6615, Laws 1899. This last section was amended in 1903, but the amendment has no effect upon the question at issue here. The respondent contends that chapter 68, p. 81, Laws 1899, is to be construed independently of, and not in connection with, said section 6615. The appellant contends that each section must be given effect in determining what salary a county judge in counties having increased jurisdiction is entitled to. Which of these two opposite contentions is the correct one depends upon the meaning of the proviso in said chapter 68, p. 81, Laws 1899; the same being: "Provided that the salary of county judges in counties having increased jurisdiction shall not be affected by the provisions of this act."

We think that each law determines by itself what the maximum salary shall be. Under chapter 68, p. 81, Laws 1899, the salary of judges in counties not having increased jurisdiction is limited to $1,800 per annum. Under section 6615, Rev. Codes 1899, the salary in counties having increased jurisdiction is $2,500. The reasonable meaning to be given to the proviso in said chapter 68 is that the salary of county judges in counties having increased jurisdiction remains the same as fixed by other statutes, regardless of the salary as fixed by said chapter 68. In other words, the provisions of said chapter 68 do not apply in ascertaining what the salary of judges of county courts in counties with increased jurisdiction is. In counties having increased jurisdiction, the salary of county judges as fixed by other laws are not to be changed or affected by the provsions of said chapter 68. Chapter 68 is not operative and does not act upon the salary fixed by such other laws, that is, such

other salary is not enlarged or diminished by said chapter 68. After a comparison and consideration of all the laws fixing the salary of the county judges in this state since 1890, this construction we think gives effect to the intention of the Legislature in enacting said chapter 68. As to the meaning of the word "affected" as used in said chapter, see Words and Phrases, vol. 1, p. 238.

In the year 1905 said section 6615, Rev. Codes 1899, was again amended. It is contended by the appellant that this amendment should be construed as not limiting the salary of county judges in counties having increased jurisdiction to the sum of $2,500, but that the same should be construed as allowing to said judges the sum of $2,500 besides the salary provided by chapter 68, p. 81, Laws 1899. In other words, it is contended by the appellant that the Legislature recognized by this amendment that said chapter 68 is still effective as providing in part what the salary of county judges shall be in counties having increased jurisdiction. We cannot agree with this contention. The last-named amendment fixed the salaries of county judges as follows: "As compensation for their services under this act, there shall be allowed and paid to the judges of county courts having civil and criminal jurisdiction, in addition to the salary provided for such judges of county courts in counties not having increased jurisdiction, the sum of one hundred dollars for each one thousand inhabitants or fraction thereof; provided that in no case shall the compensation for services under the increased jurisdiction provided for in this act exceed the sum of two thousand five hundred dollars and said sum shall cover all services under the prohibition law." We think the language of this enactment too clear for doubt as to the correct construction. It clearly was the legislative intent, as shown by the language, that the salary of county judges in counties having increased jurisdiction should not exceed the sum of $2,500.

Great stress is laid by the appellant upon the words "in addition to the salary provided for such judges of county courts in counties not having increased jurisdiction." This amendment does not affect the maximum salary allowed county judges in counties having increased jurisdiction. The evident intention was to allow those county judges the salary allowed under this amendment, besides that fixed by chapter 68, p. 81, Laws 1899, subject to the proviso that the total salary should not exceed in any case the sum of $2,500.

The provisions of chapter 68, p. 81, Laws 1899, and the provisions of this amendment, are to apply in determining what the salary shall be up to the sum of $2,500, but not when the combined salaries under the two acts exceed $2,500.

It follows that the judgment of the district court should be affirmed, and it is so ordered. All concur.