*In re* Short, *Petitioner.*

---

*In the matter of the Petition of* CORDELIA SHORT *for a Writ of Habeas Corpus.—In the matter of the Petition of* JAMES CROSS *for a Writ of Habeas Corpus.*

1. COUNTIES —*Corporate Existence—Collateral Attack.* Where a public organization, of a corporate or *quasi*-corporate character, has an existence in fact, and is acting under color of law, and its existence is not questioned by the state, its existence cannot be collaterally drawn in question by private parties.

2. —————— *Validity of County Organization.* Therefore, where a county has been organized under valid laws, and is acting as a county under valid laws, and a judgment is rendered in such county or by virtue of proceedings commenced in such county against an individual, providing for his imprisonment because of his having committed a public offense in such county, and under the judgment he is imprisoned, such individual cannot, in a proceeding in *habeas corpus,* attack the validity of the existence of such county upon the ground merely that "the plats, field-notes and records of the original government survey now on file in the office of the auditor of state in the state capitol" show that the county, as originally created by the legislature, and as afterward organized and as now existing, contains only 430½ square miles in area, while the constitution requires that no county shall be organized with a less area than 432 square miles. (Const., art. 9, § 1.)

*Original Proceedings in Habeas Corpus.*

THE case is sufficiently stated in the opinion, filed at the session of the court in November, 1891.

*Fred. C. Thomas* for petitioner.

*Milton Brown,* for respondent.

The opinion of the court was delivered by

VALENTINE, J.: Two proceedings in *habeas corpus* have been instituted in this court, in each of which the validity of the organization of Garfield county is attempted to be challenged. In the first proceeding, it appears that Mrs. Cordelia Short was regulary charged in the district court of that county upon a criminal information with committing the offense of manslaughter in the first degree. She obtained a change of venue from that court to the district court of Hodgeman county, where she was tried and convicted, and sentenced to confinement in the penitentiary for the term of five years; and it is now claimed that, because of the alleged invalidity of the organization of Garfield county, she is unlawfully restrained of her liberty by George H. Case, the warden of the state penitentiary. In the other case, the petitioner, James Cross, was charged before a justice of the peace of Center township, in Garfield county, with committing the offense of assault and battery, and was tried and convicted, and sentenced to pay a fine of $2.50, and to stand committed to the county jail until such fine and the costs of suit should be paid; and he now claims that he is unlawfully restrained of his liberty by J. B. Newbold, a constable of said Center township.

It appears that the county of Garfield was created as a territorial entity by an act of the legislature which took effect on March 23, 1887. (Laws of 1887, ch. 81, § 6; Gen. Stat. of 1889, ¶ 1491.) It was to contain, and now contains, twelve congressional townships of land, to wit, townships number 21, 22 and 23 south, of ranges number 27, 28, 29 and 30 west. This creation of the county had nothing to do with its subsequent organization as a political entity, a municipal county, a corporation or *quasi* corporation. Afterward, and on April 16, 1887, the county was duly organized as a municipal county, a corporation, under the statutes of Kansas as they then ex-

isted. (Comp. Laws of 1885, ¶¶ 1400–1412; Gen. Stat. of 1889, ¶¶ 1577–1593.) It was divided into six municipal townships according to existing law, one of which was the above-named Center township. A full set of county and township officers was duly elected, and they qualified and served; a county-seat was duly established, and named "Eminence," and since that time the county has had a full and complete county organization as a county municipality; and it has in fact and at all times since acted as a duly- and legally-organized and existing county under the statutes of Kansas relating to counties and county officers; (Comp. Laws of 1885, chs. 25, 26, ¶¶ 1429–1736; Gen. Stat. of 1889, chs. 25, 26, ¶¶ 1611–1929;) and it has at all times since and by all persons been recognized as a duly- and legally-organized and existing county; and it is an organized and existing county *de facto*, if not such *de jure*. It will therefore be seen that the county was created territorially by a statute, and it was afterward organized as a municipality under the statutes, and has since acted and continues to act as such under the statutes; and no question has ever been raised or could fairly be raised as to the legality or validity of any one of these statutes except as to the first, the one by which the county, or rather its territorial boundaries, was originally created.

The petitioners, however, now raise the question of the validity of said first-mentioned statute in these proceedings. Or in other words, they claim that the act creating Garfield county territorially, or, in other words, defining its boundary lines, is unconstitutional and invalid, although no claim is made that the statutes under which the county was organized, and the statutes under which the county has been and is now acting as a county, are subject to any such infirmities, or that they are not amply sufficient and adequate to authorize counties to organize and to act under them as legal and valid county organizations. The parties, however, agree that the county of Garfield in area contains only "four hundred and thirty and one-half square miles, and no more, as shown by the plats, field-notes and records of the original government

survey, now on file in the office of the auditor of state in the state capitol;" while the constitution requires that no county shall be organized with a less area than 432 square miles. (Const., art. 9, § 1.)   It is therefore claimed by the petitioners, upon the facts as. set forth in the aforesaid agreement, and upon no other facts or evidence, that the organization of Garfield county was and is absolutely void; that the county now has no legal or valid existence as a municipal entity; that therefore the aforesaid criminal prosecutions were and are absolutely void; that the judgments rendered therein, to wit, the judgment rendered by the district court of Hodgeman county against Cordelia Short, and the judgment rendered by the justice of the peace of Garfield county against James Cross, were and are absolutely void, and therefore that the imprisonment of these two persons is without authority of law, and illegal.   We do not think, however, that the question of the validity or invalidity of the organization of Garfield county can be raised in these collateral proceedings or in any collateral manner.   The question can be raised only by the state, in an action or proceeding in the nature of *quo warranto*.   Where a public organization of a corporate or *quasi*-corporate character has an existence in fact and is acting under color of law, and its existence is not questioned by the state, its existence cannot be collaterally drawn in question by private parties. (Dill. Mun. Corp., 4th ed., § 43*a*; Cooley, Const. Lim., 6th ed., pp. 309, 310.   See also the following cases: *Voss v. School District*, 18 Kas. 467; *School District v. The State*, 29 id. 57; *Back v. Carpenter*, 29 id. 349; *Ritchie v. Mulvane*, 39 id. 241, 255, 256, 257; *Mendenhall v. Burton*, 42 id. 570; *Tisdale v. Town of Minonk*, 46 Ill. 9; *Nettering v. City of Jacksonville*, 50 id. 39; *Town of Geneva v. Cole*, 61 id. 397; *City of St. Louis v. Shields*, 62 Mo. 247; *Inhabitants of Fredericktown v. Fox*, 84 id. 59; *The State v. Fuller*, 96 id. 165; *The People v. Maynard*, 15 Mich. 463, 470; *Stuart v. School District*, 30 id. 69; *Bird v. Perkins*, 33 id. 28; *Arapahoe Village v. Albee*, 24 Neb. 242; *Town of Henderson v. Davis*, 106 N. C. 88; *Speck v. The State*, 7 Baxt. [Tenn.] 46; *Ford v. Farmer*, 9 Humph.

[Tenn.] 152, 159, 160; *Sherry v. Gilmore,* 58 Wis. 324; *Austrian v. Guy,* 21 Fed. Rep. 500; *Hill v. City of Kahoka,* 35 id. 32. See also the cases of *Worley v. Harris,* 82 Ind. 493; *The State v. Leatherman,* 38 Ark. 81. And as to officers *de facto* see the following cases: *Ex parte Strang,* 21 Ohio St., 610; *Brown v. O'Connell,* 36 Conn. 432; *The State v. Carroll,* 38 id. 449; *Laver v. McGlachlin,* 28 Wis. 364; *Cole v. Black River Falls,* 57 id. 110; *Burt v. W. & St. P. Rld. Co.,* 31 Minn. 472.)

As before stated, the county of Garfield was organized under valid laws, it is now acting under valid laws, and the only question which we are now asked to consider is, whether the statute defining its boundaries is valid or not. It is claimed that the statute does not give to it territory enough by $1\frac{1}{2}$ square miles, or 960 acres, to make it valid. We do not think that we can consider this question in these proceedings. But we might say, however, that the plats and field-notes of the original government survey are not conclusive evidence upon this subject. They are only *prima facie.* They may be rebutted or impeached as to their accuracy and correctness, and the fact that the legislature and the governor have created the county, and that it has been duly organized and is now acting as a county, is some evidence against their correctness, provided they show what the parties have agreed they show in this case. The question, however, as to whether the county has sufficient area or not cannot be litigated in either of these present *habeas corpus* proceedings.

The writ of *habeas corpus* prayed for will therefore be denied, and a judgment will be rendered in each case against the petitioner for costs.

All the Justices concurring.