No. 52,045 ■

CITY OF LENEXA, *Plaintiff-Appellant,* v. CITY OF OLATHE, *Defend-ant-Appellee.*

(620 P.2d 1153)

Opinion filed December 6, 1980.

.*Robert H. Freilich,* of Kansas City, Missouri, and *Richard W. Byrum,* of Schnider, Shamberg, and May, Chartered, of Shawnee Mission, argued the cause and were on the brief for the appellant.

*Marilyn J. Harbur,* of Olathe, argued the cause and was on the brief, and *Thomas A. Glinstra,* of Olathe, appeared with her for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is an action in the nature of quo warranto, declaratory judgment and injunction, brought by the city of Lenexa, attacking the annexation of certain lands in Johnson County by the defendant, city of Olathe. The city of Olathe filed a motion to dismiss the action on the ground that the city of Lenexa lacked standing to maintain the action. The district court sustained the motion to dismiss, holding that an action challenging the annexation of land by a city can only be brought by the state through the attorney general or the district attorney or in certain instances by an aggrieved landowner. The city of Lenexa has appealed from that ruling.

In rendering judgment, the Honorable Herbert W. Walton filed a well-written memorandum decision which states succinctly (1)

the issues presented in the case; (2) the undisputed facts as shown by the pleadings and exhibits attached thereto; (3) the rules of law applicable to the facts shown; and (4) the reasons for the decision. Because all issues are thoroughly analyzed and discussed in Judge Walton's memorandum decision, we quote those portions which set forth the considerations upon which his decision was based:

"Issues

"The primary issue to be determined is whether the City of Lenexa has standing to challenge the annexation proceedings of the City of Olathe that were undertaken pursuant to K.S.A. 12-520 and 12-520a. Lenexa sets forth five theories upon which standing may be maintained: (1) a quo warranto action; (2) authorization under home rule powers; (3) an administrative appeal under K.S.A. 60-2101(d); (4) the inherent power to bring an injunctive or declaratory action to protect a municipal interest; and (5) a theory of estoppel based on contract. Olathe counters pointing to the legislative nature of an annexation proceeding and the long held rule of this state limiting the parties who may challenge such a proceeding. For the reasons more fully set out below, this Court agrees with the position advanced by the defendant, City of Olathe, and grants its motion to dismiss.

"Factual considerations

"This motion must be decided on the facts alleged in the plaintiff's petition, taken in the light most favorable to the plaintiff, and with any factual doubts resolved in the plaintiff's favor. 'Dismissal is justified only if the allegations of the petition clearly demonstrated that the plaintiff does not have a claim.' *Woolums* v. *Simonsen,* 214 Kan. 722, 726, 522 P.2d 1321 (1974). For the purposes of deciding the legal questions raised by Olathe's challenge to Lenexa's standing to bring this suit, however, no determinative facts are in dispute.

"Statement of the Case

"This action concerns Olathe's annexation of three parcels of land located to the north of Olathe proper and to the west of Lenexa. The three parcels in question are but a small area of an even bigger tract of land coveted by both parties in this rapidly urbanizing area of Johnson County. In March of this year Lenexa disclosed a specific projected plan of annexation for a 20 square mile area including the properties in question. Subsequent to the publication of the Lenexa plan of annexation, the owners of the parcels in question presented the City of Olathe with petitions for annexation which were accepted and the challenged annexation accomplished under K.S.A. 12-520(*g*).

"Conclusions of Law

"The City of Lenexa has raised numerous attacks on the procedures followed in the annexation, the legal authority of the defendant to annex the land and the advisability of the annexation itself. In the final analysis, however, the question before this court is whether the legislature intended to allow municipalities to challenge annexations by other municipalities.

"I

"The annexation of land by municipal corporations has traditionally been regarded as a legislative function. As such, '[t]he wisdom, necessity or advisability of annexing territory to cities is not a matter for consideration by the courts.

The basic function and duty of the courts is to determine whether a city has statutory authority and whether it has acted thereunder in passing an annexation ordinance.' *State, ex rel., v. City of Overland Park,* 192 Kan. 654, Syllabus 3, 391 P.2d 128 (1964). Also see *Clarke v. City of Wichita,* 218 Kan. 334, 543 P.2d 973 (1975). In addition, an attack on the annexation of land by a municipality has been construed as a challenge to the legality of the organization or reorganization of a city in much the same manner as an attack on the legality of the corporate existence of the city itself. *Babcock v. City of Kansas City,* 197 Kan. 610, 419 P.2d 882 (1966). Because of this view the law has always limited the right to bring an action challenging an annexation ordinance. Prior to the 1974 statutory amendments to the annexation laws, this right rested solely with the state acting through a county attorney, district attorney or the attorney general. *Sabatini v. Jayhawk Construction Co.,* 214 Kan. 408, 520 P.2d 1230 (1974); *State, ex rel., v. Babcock,* supra.

"The *Babcock* case typifies the law in Kansas regarding standing to challenge annexations prior to the 1974 amendments. In *Babcock* an individual landowner brought a quo warranto action challenging the annexation by the City of Kansas City of several tracts of land including his own. The court held that it was the well established rule that private individuals could not maintain such an action and that the right to challenge an annexation vested solely with the state. The court went on to observe that it was a rule of universal application that had been

'examined and re-examined with great care and has always been reaffirmed; it is said to be founded upon public policy and has been consistently applied regardless of whether the procedure was a direct attack upon annexation such as here presented. (*Smith v. City of Emporia,* supra [168 Kan. 187, 211 P.2d 101 (1949)]; *State, ex rel., v. City of Kansas City,* 186 Kan. 190, 350 P.2d 37) or an indirect or collateral attack upon annexation such as in *Topeka v. Dwyer,* supra [70 Kan. 244, 78 Pac. 1162 (1904)]. The rule has been held applicable to all types of actions attacking the legality of corporate existence of cities and districts regardless of whether the attacking procedure was injunction (*Chaves v. Atchison,* supra, [77 Kan. 176, 94 Pac. 624 (1908)]), quo warranto (*State, ex rel., v. City of Kansas City,* supra), declaratory judgment (*Fairfax Drainage District v. City of Kansas City,* 190 Kan. 308, 374 P.2d 35), appeals from an order of the Board of County Commissioners (*Lampe v. City of Leawood,* 170 Kan. 251, 225 P.2d 73), habeas corpus (*In re Short,* Petitioner, 47 Kan. 250, 27 Pac. 993), or criminal defense (*City of Topeka v. Dwyer,* supra).'

"The application of this rule to cities was also recognized in *State, ex rel., v. City of Overland Park,* supra, where, in dicta, the court observed that '[o]ne city cannot prosecute an action attacking the validity of an annexation ordinance of another city.' See also *City of Kansas City v. Board of County Commissioners,* 213 Kan. 777, 518 P.2d 403 (1974).

"In 1974 the Kansas Legislature adopted amendments to the state's annexation procedures that modified the standing rules for challenging the validity of an annexation. In essence, the amendments changed the law to allow individual landowners standing to challenge annexation and also repealed K.S.A. 12-502(c)(1964) which related to quo warranto actions maintained by the state. The

new language added to K.S.A. 12-520 in effect overruled the *Babcock* decision as to individual standing. The provision provides:

'Any owner of land annexed by a city under the authority of this section may within thirty (30) days next following the publication of the ordinance annexing such land maintain an action in the district court of the county in which such land is located challenging the authority of the city to annex such lands and the regularity of the proceedings had in connection therewith.' K.S.A. 12-520.

"The plaintiff contends that the amendment completely alters the prior law regarding challenges to annexation. The defendant, of course, argues the amendment was intended to remedy the result of *Babcock* and provide the aggrieved landowner an opportunity to oppose an unlawful annexation. The answer to this lies in a determination of the legislative intent in amending the annexation statutes. In making such a determination, this court is not limited to the mere consideration of the language employed, but may also look to the historical background of the enactment, the circumstances accompanying its passage, the purposes to be accomplished, and the effect the statute may have under the various suggested constructions. *Southeast Kansas Landowners Ass'n.* v. *Kansas Turnpike Auth.,* 224 Kan. 357, 367, 582 P.2d 1123 (1978); *State* v. *Luginbill,* 223 Kan. 15, Syl. 2, 574 P.2d 140 (1977); *Coleman* v. *Brotherhood State Bank,* 3 Kan. App. 2d 162, 172, 596 P.2d 103 (1979).

"In the present case, the statute in question was considered by the Special Committee on Local Government, an interim study committee for the 1974 Legislature. A report that accompanied the committee's proposed bill, effectively sets out the thinking of the bill's architects. The report noted that individual property owners did not have the right to challenge annexations by cities and that '[t]he committee is of the opinion that the rights of *individual property holders* should be enhanced in order to bring about more of a balance between public and private interests.' *Reports of Special Committees to the 1974 Kansas Legislature,* Proposal No. 92 - Annexation p. 92-4 (1973). (emphasis added.) The committee went on to conclude that their proposal would provide the individual property owner access to the courts that had previously been denied in annexation challenges. The committee's proposal, HB 1621, was adopted without change by the legislature.

"Also helpful in determining the legislature's intent in adopting the amendments to the annexation laws are the minutes from legislative hearings held on the subject. A number of public officials and citizens testified before the Special Committee while it was formulating its proposal. The clear emphasis by a large number of the participants was the inability of the affected landowner to challenge the annexation. *Preliminary Minutes of the Special Committee on Local Government (Interim Committee) for the 1974 Session,* June 9 & 10, 1973.

"It is this court's conclusion that the language of the statute allowing 'Any owner of land annexed' to bring suit challenging the annexation does not in and of itself extend standing to a neighboring municipality. The limited scope of that portion of the 1974 amendments relating to standing was recognized in *Clarke* v. *City of Wichita,* 218 Kan. 334, 543 P.2d 973 (1975), where the court discussed the change in legislative policy as follows:

'The 1974 legislative amendment allowing any owner of land annexed by the city to "challenge the authority of the city to annex such lands and the

regularity of the proceedings had in connection therewith" changes our prior law only to the extent that it is no longer necessary that an action be brought in the name of the state.' 218 Kan. at 349.

"The plaintiff further contends that the repeal of K.S.A. 12-502c in 1974 removed any statutory impediment preventing one municipality from challenging an annexation by another. But the repealed version of 12-502c was not an enabling statute permitting the state to challenge annexations. Instead, it was merely a statute of limitations imposed on quo warranto actions by the state. This argument gains added force when it is realized that 12-502c was first added to the statute books in 1957 while quo warranto actions by the state prior to 1957 are legion. See e.g., *State, ex rel., v. City of Topeka,* 175 Kan. 488, 264 P.2d 901 (1953); *State, ex rel., v. City of Topeka,* 173 Kan. 387, 246 P.2d 250 (1952). In other words, 12-502c imposed a limitation on the right of the state to bring a quo warranto action against a municipality but its presence did not otherwise affect the inherent and sole right of the state to bring such actions. Likewise, its repeal should be construed as removing only the limitations that it had originally imposed, the statute of limitations on quo warranto actions.

"Finally, it should be recognized that the 1974 legislature studied the annexation problem and must be assumed to have known the law of Kansas. In the preparation of the committee report and the bill that was subsequently adopted, the members of the committee and their staff spoke only of the injustice of prohibiting an affected landowner in the annexed area from challenging an annexation. No mention was made of extending the right to challenge annexation to neighboring municipalities. Hence, this court can only conclude that the legislature did not intend to enlarge the right of standing beyond that granted by the express language of the amendment. Clearly if the legislature had intended to so enlarge the standing provisions, it could have done so by express language.

"II

"The plaintiff next asserts that the Kansas home rule amendment gives the power to a municipality to challenge the annexation procedure of another municipality. For the purposes of this dispute both parties have conceded that the state has exclusive jurisdiction to establish annexation procedures. But the City of Lenexa seeks to draw a line between the state's exclusive jurisdiction in establishing the procedures to be followed and the right to challenge an annexation as not following those procedures. They point to the general grant of power contained in Art. 12 § 5(b) and the liberal construction clause in favor of the cities found in Art. 12 § 5(d). Thus, they argue that they need not base their standing on a particular statutory provision passed by the legislature, but instead have standing absent an express statutory provision denying standing in annexation matters.

"It must be questioned, however, whether the home rule amendment was intended to allow one city to challenge the actions of another city when the amendment itself denies cities the power to annex other than as provided by statute. The general rule is that legislative intent to reserve to the state exclusive jurisdiction must be clearly manifested by statute before it can be held that the state has withdrawn from the cities the power to take action in a certain area. *Garten Enterprises, Inc. v. City of Kansas City,* 219 Kan. 620, 549 P.2d 864 (1976); *City of Junction City v. Lee,* 216 Kan. 495, 532 P.2d 1292 (1975). Here, the constitutional amendment granting home rule authority to cities expressly re-

serves annexation matters to the state and the legislature has expressly provided by statute who can challenge an annexation proceeding. In addition, the authority over annexation reserved by Art. 12 § 5 must be read as effectively recognizing and preserving the inherent power of the state in this area.   .   .   .

"Such a result is not surprising when a municipality's home rule powers are considered in conjunction with the intent of the home rule amendment. Home rule is intended to give cities flexibility in their local affairs and government. Home rule allows a city to respond to a local problem with a local solution without the necessity of seeking authorization from the legislature unless a specific statute of general application prevents action. See *City of Junction City* v. *Lee,* supra; Martin, *Home Rule for Kansas Cities,* 10 Kan. L. Rev. 501 (1962); Crumment, *City Home Rule in Kansas,* 9 Washburn L.J. 1 (1969). But home rule cannot be construed as authority for one municipality to determine its relationships with other municipalities through the use of court actions challenging the annexation or corporate existence of the others. Questions concerning the relationships between cities call for statewide action. Art. 12 § 5 and K.S.A. 12-520 provide the answer for annexation challenges. Both the state and aggrieved landowners have standing and one city may not take unilateral action to challenge an annexation by another.

"III

"Finally, Lenexa has urged that its standing to prosecute this suit may be based on an administrative appeal under K.S.A. 60-2101(*d*), its inherent power to bring injunctive or declaratory actions to protect its interests and a theory of estoppel based on contract. While each of these theories may have some merit to support standing in a suit other than that challenging an annexation proceeding, from the discussion above it is clear that the law of Kansas narrowly restricts standing in annexation challenges and that the City of Lenexa does not qualify. The cases cited in *Babcock* v. *City of Kansas City,* supra, effectively illustrate this point."

As correctly noted by the trial court in the memorandum decision, the Kansas Constitution, under the Home Rule Amendment, Article 12, Section 5, vests in the state legislature full power and authority over the subject matter of the alteration of city boundaries by annexation. The most recent legislation in this area was adopted in 1974 (K.S.A. 12-519 *et seq.*). There the legislature adopted a statutory scheme for the annexation of land by cities, which the courts of this state are bound to recognize and follow. As we analyze the 1974 amendments, the legislature has divided city annexations into two distinct categories: (1) annexations of land which adjoins the city or which is owned by or held in trust for the city, and (2) annexations of land not adjoining the city. In the present case, the undisputed facts show clearly that we are dealing with an annexation of land which *adjoins* the city.

K.S.A. 12-519(*d*) defines the word "adjoins" as used in the annexation statutes in the following manner:

"(*d*) 'Adjoins' means to lie upon or touch (1) the city boundary line; or (2) a highway, railway or watercourse which lies upon the city boundary line and separates such city and the land sought to be annexed by only the width of such highway, railway or watercourse."

The tracts of land involved in the present case adjoined the city within the statutory definition at the time the annexations occurred. The sections pertaining to the annexation of land which adjoins the city are K.S.A. 12-520, 12-520a, and 12-520b which provide in part as follows:

12-520. "Except as otherwise hereinafter provided, the governing body of any city may by ordinance annex land to such city if any one or more of the following conditions exist:

"(*a*) The land is platted, and some part of such land *adjoins* the city.

"(*b*) The land is *owned by and held in trust for the city* or any agency thereof.

"(*c*) The land *adjoins* the city and is owned by or held in trust for any governmental unit other than another city.

"(*d*) The land *lies within or mainly within the city* and has a common perimeter with the city boundary line of more than fifty percent (50%).

"(*e*) The land if annexed will make the city boundary line straight or harmonious and some part thereof *adjoins* the city, except no land in excess of twenty (20) acres shall be annexed for this purpose.

"(*f*) The tract is so situated that two-thirds (⅔) of any boundary line *adjoins* the city, except no tract in excess of twenty (20) acres shall be annexed under this condition.

"(*g*) The land *adjoins* the city and a written petition for or consent to annexation is filed with the city by the owner.

.   .   .   .

"Whenever any city shall annex any land under the authority of subsection (*b*) of this section which does not adjoin the city, tracts of land adjoining the land so annexed shall not be deemed to be adjoining the city for the purpose of annexation under the authority of this section until such adjoining land or the land so annexed adjoins the remainder of the city by reason of the annexation of the intervening territory.

.   .   .   .

"The governing body of any city may by one ordinance annex one or more separate tracts or lands each of which conforms to any one or more of the foregoing conditions.   .   .   .

"Any *owner of land* annexed by a city under the authority of this section may within thirty (30) days next following the publication of the ordinance annexing such land maintain an action in the district court of the county in which such land is located challenging the authority of the city to annex such lands and the regularity of the proceedings had in connection therewith." (Emphasis supplied.)

12-520a. "(*a*) The governing body of any city desiring to annex land *under the authority of K.S.A. 12-520* shall first adopt a resolution stating that the city is considering the annexation of such land. Such resolution shall:

"(1) Give notice that a public hearing will be held to consider the annexation of such land and fix the date, hour and place of such public hearing.

"(2) Describe the boundaries of the land proposed to be annexed; and

"(3) State that the plan of the city for the extension of services to the area proposed to be annexed, which is required under the provisions of K.S.A. 12-520b, is available for inspection during regular office hours in the office of the city clerk.

"(*b*) The date fixed for such public hearing shall be not less than sixty (60) nor more than seventy (70) days following the date of the adoption of the resolution fixing the date of such hearing.

"(*c*) A copy of the resolution providing for the public hearing shall be mailed by certified mail to each owner of land proposed to be annexed not more than ten (10) days following the date of the adoption of such resolution. Such resolution shall be published in the official newspaper of such city not less than one week and not more than two weeks preceding the date fixed for such public hearing. A sketch clearly delineating the area in such detail as may be necessary to advise the reader of the particular land proposed to be annexed shall be published with such resolution and a copy thereof mailed *to the owner of the property* with such resolution.

"(*d*) At the public hearing, a representative of the city shall present the city's proposal for annexation, including the plan of the city for the extension of services to the area proposed to be annexed. Following such explanation, all interested persons shall be given an opportunity to be heard. The governing body may for good cause shown recess such hearing to a time and date certain, which shall be fixed in the presence of persons in attendance at the hearing.

"(*e*) *No resolution, notice and public hearing required under the provisions of this section shall be required as a prerequisite to the annexation of land owned by or held in trust for the city or any agency thereof or land all of the owners of which petition for or consent thereto in writing.*" (Emphasis supplied.)

12-520b. "The governing body of any city proposing to annex land *under the provisions of K.S.A. 12-520* shall make plans for the extension of services to the area proposed to be annexed and shall, prior to the adoption of the resolution provided for in K.S.A. 12-520a, prepare a report setting forth such plans. . . .

"*The preparation of a plan for the extension of services as hereinbefore required shall not be required for or as a prerequisite to the annexation of land all of the owners of which petition for or consent to such annexation in writing.*" (Emphasis supplied.)

These statutes make it clear that the legislature has determined that, where a dispute arises as to the annexation of land *which adjoins the city,* the only interested parties to the controversy are the city and the owner of the land which has been proposed for annexation. It should be noted that K.S.A. 12-520, in the last paragraph, provides that an owner of land annexed by a city under K.S.A. 12-520 may maintain an action in the district court challenging the authority of the city to annex his property and the regularity of the proceedings had in connection therewith. That statute does not recognize any right of action by another incorporated city in the county to dispute the proposed annexation. It

should also be noted that under 12-520a(*e*), where the land adjoins the city and a written consent is filed with the city by the owner, no resolution, notice, or public hearing is required. Likewise, the preparation of a plan for the extension of services is not required where the land adjoins the city and the landowner consents to the annexation (K.S.A. 12-520b[*b*]). We have concluded from these statutory provisions that other incorporated cities in the county are not recognized as interested parties in cases of annexation of land which adjoins a city and the owner of the property consents to the annexation.

The subject matter of annexation of land *not adjoining the city* is covered by K.S.A. 12-520c. That section provides as follows:

"12-520c. **Annexation of land not adjoining city, when; resolution to county commissioners; findings by board spread upon journal; effect; appeals to district court.**

"(*a*) The governing body of any city may by ordinance annex *land not adjoining the city* if the following conditions exist:

"(1) The land is located within the same county as such city;

"(2) The owner or owners of the land petition for or consent in writing to the annexation of such land; and

"(3) *The board of county commissioners of the county find and determine that the annexation of such land will not hinder or prevent the proper growth and development of the area or that of any other incorporated city located within such county.*

"(*b*) No land adjoining any land annexed by any city under the provisions of this section shall be deemed to be adjoining the city for the purpose of annexation under any other act or section of this act until such adjoining land or the land annexed under this section shall adjoin the remainder of the city by reason of the annexation of the intervening territory.

"(*c*) Whenever the governing body of any city deems it advisable to annex land under the provisions of this section such governing body shall by resolution request the board of county commissioners of the county to make a finding as required under subsection (*a*)(3) of this section. . . .

"*Any owner or city aggrieved* by the decision of the board of county commissioners may appeal from the decision of such board to the district court of the same county in the manner and method set forth in K.S.A. 19-223. *Any city* so appealing shall not be required to execute the bond prescribed therein." (Emphasis supplied.)

It is important to note that in order for the governing body of a city to annex land *not adjoining the city,* the owner of the land considered for annexation must consent to such annexation in writing and, *in addition,* the board of county commissioners of the county must find and determine "that the annexation of such land will not hinder or prevent the proper growth and develop-

ment of the area *or that of any other incorporated city* located within such county." Subsection (*c*) of K.S.A. 12-520c provides that *any owner or city* aggrieved by the decision of the board of county commissioners may appeal from the decision of the board to the district court. We have concluded from this statutory language that it is the intent of the legislature that in cases of a proposed annexation of land not adjoining the city, the rights of another incorporated city in the county must be considered and it has an interest which entitles it to challenge such an annexation in the district court.

As we have emphasized above, there is involved in the case presently before us an annexation of land which adjoins the city and to which annexation the owner of the property has consented. In the present case, the city of Olathe annexed the three tracts by means of three ordinances enacted and proposed on successive days. The first tract annexed directly adjoins the city of Olathe on that city's northern boundary. The ordinance annexing the first tract of land was enacted on June 4, 1979, and was published on June 5, 1979. The annexation became effective on publication under K.S.A. 12-523. The second tract of land was annexed by ordinance on June 5, 1979, which ordinance was published on June 6, 1979. The third tract of land was annexed by city ordinance on June 6, 1979, and the ordinance was published on June 9, 1979. Under these undisputed facts, it appears that in each instance the land adjoined the city at the time the annexation occurred.

On appeal, the city of Lenexa contends that it has standing to bring the action because the three tracts annexed were located within an area where the city had previously exercised exterritorial jurisdiction by developing a comprehensive plan for the area and by reviewing proposed subdivision regulations. We fully understand the concern of the city of Lenexa as to the annexation in this case. We are, however, bound by the statutory provisions, noting in particular K.S.A. 12-524 which prohibits the annexation by one city of any part or the whole of any other incorporated city. In its wisdom, the legislature could have provided in 12-524 a remedy where one city proposes to annex land included within an area where another city has already exercised exterritorial police power. Unfortunately for the city of Lenexa, the legislature did not provide such protection to cities where that

situation arises. Any statutory amendments to cover that situation must be addressed by the legislature and not by the courts. For the reasons set forth above, we have concluded that the district court did not err in sustaining the defendant's motion to dismiss the appeal on the ground that the city of Lenexa lacked standing to bring the action.

The judgment of the district court is affirmed.