SANDY CITY, a municipal corporation of the State of Utah, Plaintiff and Appellant,

v.

CITY OF SOUTH JORDAN, a municipal corporation of the State of Utah, Defendant and Respondent.

No. 17673.

Supreme Court of Utah.

Aug. 16, 1982.

Michael K. Burton, Sandy, for plaintiff and appellant.

Michael J. Mazuran, Salt Lake City, for defendant and respondent.

DURHAM, Justice:

The City of Sandy (Sandy) challenges the legality of the annexation of certain property by the City of South Jordan (South Jor-dan) in the winter and spring of 1979. The district court, after a hearing, denied Sandy's motion for summary judgment and granted South Jordan's motion for summary judgment. Sandy appeals, requesting that we reverse the district court's grant of South Jordan's motion for summary judgment and grant its motion. The facts in this dispute, as set out below, are not contested and therefore this matter was appropriate for summary judgment. Utah R.Civ.P. 56. We affirm.

This dispute is governed by § 10–2–401, U.C.A., 1953 (1979 Supp.), which became effective May 10, 1977, and was later supplanted by legislation which became effective May 8, 1979. Laws of Utah, Ch. 48, 1977; Ch. 25, 1979. In January of 1979, a group of citizens presented to the Mayor and City Council of South Jordan the requisite petitions and maps, and requested that certain property bounded by 9800 South and 11400 South on the north and south, respectively, and Interstate 15 and Jordan River on the west and east, respectively, be annexed to the City of South Jordan. These documents were presented to the South Jordan City Council at a meeting held on January 30, 1979. The City Council of South Jordan unanimously passed resolution 79–1, effective immediately, annexing the territory described in the citizens' petition. On February 1, 1979, a certified copy of the annexation resolution together with a plat and legal description were recorded with the county recorder as required by § 10–2–401, U.C.A., 1953 (1979 Supp.). The citizens' petition and map, the annexation resolution adopted by the City of South Jordan, and the plat and documents filed with the county recorder contained identical descriptions of the property to be annexed, none of which had been previously annexed by Sandy.

In March of 1979, concerns apparently arose about attacks by Salt Lake County on certain municipal annexations. In order to insulate itself from such attacks, South Jordan undertook a second annexation of the property which had been the subject of the January 30, 1979 resolution. Resolution 79–2, adopted on April 24, 1979, is identical to

resolution 79–1 in all respects, including its description of the property to be annexed. On April 25, 1979, the new annexation documents and a plat map were filed with the county recorder. However, that plat map contained a legal description and an outline of the annexed area which included a small portion of the City of Sandy which was not described in the resolution. Residents of the area described in resolutions 79–1 and 79–2 have paid property tax to the City of South Jordan since January 1, 1980, and no property owners in that area have protested the annexation.

In January, 1980, Sandy filed a petition for extraordinary writ claiming, in six counts *inter alia,* that the annexation by the City of South Jordan should be declared void because it included property previously annexed by Sandy and that the Petition for Annexation and the annexation procedures followed by the City of South Jordan failed to comply with the requirements of § 10–2–401, U.C.A., 1953 (1979 Supp.). In May of 1980, Judge Croft, of the Third District Court, granted South Jordan's motion to dismiss all of Sandy's causes of action except the first, which claimed the annexation was defective because it included property previously annexed by Sandy. Sandy did not appeal Judge Croft's dismissal. The later grant of South Jordan's motion for summary judgment, which is the subject of this appeal, went only to the issue raised in Sandy's first cause of action.

Sandy claims that the annexation is null and void because the second resolution, resolution 79–2, repealed by implication the first resolution, 79–1, and is therefore the only operative legislation concerning this annexation.[1] Sandy further claims that

resolution 79–2 should now be declared null and void because it is defective due to its inclusion of land previously annexed by Sandy in the plat map and legal description filed with the County Recorder. South Jordan responds that resolution 79–1 is still viable. Since Sandy's specific objections to that resolution were dismissed by Judge Croft and the dismissal was not appealed by Sandy, South Jordan argues that Sandy cannot now claim that that resolution was defective. In addition, South Jordan claims that even if resolution 79–1 is deemed repealed by implication, this Court should not declare resolution 79–2 null and void. Resolution 79–2 contained the correct legal description, and the incorrect description on the plat map filed with the County Recorder was a mistake which could be easily corrected by filing an amended plat map. The residents in the annexed area have paid their taxes without protest to South Jordan; they participate in city government and would be adversely affected if the resolution of annexation were annulled. South Jordan says that it has not attempted to collect taxes from the area of Sandy incorrectly included in the plat map nor attempted to exercise any governmental authority in connection with that property. South Jordan claims it did not annex that territory, never intended to annex that territory, and that the inadvertent inclusion of that territory on the plat map does not justify the extreme remedy requested by Sandy.

■ Fixing municipal boundaries is a legislative function with which this Court generally will not interfere. Since territorial days, the legislature has delegated the power to debate and decide city boundaries to city governments. Laws of the Territory

1. We assume for purposes of this appeal that the City of Sandy has standing to raise the question of the effect of resolution 79–2 since documents filed as a consequence of the passage of that resolution raise the legitimate question of whether a portion of Sandy is included in the annexation. Absent the peculiar factual situation presented in this case, we do not assume Sandy would have standing under the statute in effect at the time to challenge the annexation of property by a sister city. The new statute, in effect since May 8, 1979, provides that an "affected entity" may make an

application for the involvement of the boundary commission and an "affected entity" must receive notice of the time, place and date of any hearings. Sections 10–2–408 and 10–2–409, U.C.A. (1981 Supp.). The phrase "affected entity" is defined in § 10–1–104(8). See: *Sweetwater Properties v. Town of Alta,* Utah, 622 P.2d 1178 (1981). Any comment by this Court regarding the effect of these provisions on the standing of one city to challenge in court the annexation action of another city must await the appropriate case.

of Utah, Chapter LXVIII, Municipal Corporations, 1888, *Doenges v. City of Salt Lake,* Utah, 614 P.2d 1237 (1980); *Freeman v. Centerville City,* Utah, 600 P.2d 1003 (1979) and cases cited therein. Utah's statute of annexation remained unchanged for many years, but recently the Utah Legislature has undertaken to make substantial changes in the annexation procedures. Laws of Utah, Ch. 48 1977; Ch. 25, 1979. Under the 1979 amendments, not applicable to this case, local boundary commissions were granted some of the legislative authority previously held exclusively by the municipal governments. Sections 10–2–402, 10–2–406, U.C.A., 1953 (1981 Supp.). The reassertion by the legislature of its prerogatives in this regard only serves to highlight that it is not the function of the courts to determine the appropriate procedures for annexation as long as the procedures are established within constitutional limitations, *Freeman, supra.* It is also not the function of the courts to consider the wisdom, necessity or advisability of particular annexations of property to the cities. *The City of Lenexa v. City of Olathe,* 228 Kan. 773, 620 P.2d 1153 (1980). "The basic function and duty of the courts is to determine whether a city has statutory authority, and whether it has acted thereunder in passing an annexation ordinance." *Lenexa,* 620 P.2d at 1156. Once we determine that a city has been in substantial compliance with these requirements, we will not alter the operation of the statute under which the annexation occurred. *Sweetwater Properties supra,* n. 1.

The annexation statute in effect when resolution 79–1 was passed by the City of South Jordan provided as follows:

On filing the maps, plats and articles of amendment, the annexation shall be deemed complete and the territory annexed shall be deemed and held to be part of the annexing municipality, and the inhabitants thereof shall enjoy the privileges of the annexation and be subject to the ordinances, resolutions and regulations of the annexing municipality.

Section 10–2–401, U.C.A., 1953 (1979 Supp.).

Whenever the inhabitants of any territory annexed to any municipality pay property tax levied by the municipality for one or more years following the annexation and no inhabitants of the territory protest the annexation during the year following the annexation, the territory shall be conclusively presumed to be properly annexed to the annexing municipality.

Section 10–2–403, U.C.A., 1953 (1979 Supp.).

When the appropriate maps, plats and documents relating to resolution 79–1 were filed on February 1, 1979, the territory annexed was "deemed and held to be part of the annexing municipality, and inhabitants thereof shall enjoy the privileges of the annexation." The affidavits filed with South Jordan's motion for summary judgment establish that property taxes were paid by the inhabitants of that territory for more than one year following annexation and it is an undisputed fact that no inhabitants of the territory filed a protest during the year following the annexation. Therefore, by operation of the statute, the annexation was deemed complete on February 1, 1979, and the propriety of the annexation was conclusively presumed one year later.

 Since the power to set city boundaries is a legislative function, the powers delegated to the cities by the legislature are limited to those expressly set out in the annexation statutes. The statutes in effect in the spring of 1979 provided for a consolidation of municipalities, § 10–2–601, *et seq.,* U.C.A., 1953 (1979 Supp.), the dissolution of municipalities, § 10–2–701, *et seq.,* U.C.A., 1953 (1979 Supp.) and for the restriction of municipal limits, § 10–2–501, *et seq.,* U.C.A., 1953 (1979 Supp.). None of these sections provided a procedure by which a municipality could de-annex or sever a portion of the territory within its corporate limits while continuing to function as a duly constituted municipality in relation to the balance of the territory. The annexed territory became part of the intergraded whole and lost its identity as a distinct territorial unit.

 Sandy claims that the enactment of resolution 79–2 in April repealed by implication resolution 79–1, thus negating the annexation described in the first resolution.

We reject that analysis. The annexation became complete on February 1, 1979, with the filing of the documents required by § 10–2–401, U.C.A., 1953 (1979 Supp.). At that point, the inhabitants enjoyed the privileges of annexation and could not be subject to de-annexation or severance from the City of South Jordan by any legislative act of the South Jordan City Council. After passage of one year, the procedures which led to that completed annexation are conclusively deemed to be proper. Sandy would have us find that South Jordan's City Council did by implication that which it was not authorized to do by direct legislation. We reject such an anomalous result.

■ We are then left with the question of the effect of resolution 79–2. In regard to the territory which was annexed by resolution 79–1, it is superfluous and has no operative effect. Since resolution 79–1 is deemed by operation of the statute to have been properly passed and implemented, the question of whether resolution 79–2 could have cured or supplanted any defects in the original annexation procedure is moot. The original petition and plat filed by the residents of the annexed territory and the legal description included in resolution 79–2 did not include any part of Sandy. Therefore, despite the inclusion of a small part of Sandy on the plat and legal description filed with the County Recorder, South Jordan never assumed jurisdiction over the property located in Sandy in connection with resolution 79–2 and any attempts to annex that territory, even if we assume that was South Jordan's intention, are void *ab initio*. *Nilson Enterprises v. City of Great Falls*, Mont., 621 P.2d 466 (1981). We need not decide for purposes of this case whether such a mistake in the documents filed with the county recorder would have any effect on the annexation of the property which does not overlap with the territory of Sandy since we have held above that the completion of the annexation of that property occurred on February 1, 1979, pursuant to resolution 79–1.

Affirmed.

HALL, C.J., and STEWART, OAKS and HOWE, JJ., concur.