In the Matter of the Disconnection of Territory and Restriction of the Corporate Limits of Sandy City, Utah.

SOUTH JORDAN CITY, Plaintiff and Appellant,

v.

SANDY CITY, Defendant and Appellee.

No. 930005.

Supreme Court of Utah.

March 4, 1994.

Michael Z. Hayes, Salt Lake City, and Michael J. Mazuran, Lisa G. Romney, South Jordan, for South Jordan City.

Walter R. Miller, Salt Lake City, for Sandy City.

STEWART, Associate Chief Justice:

On July 8, 1992, South Jordan City filed a petition in the district court pursuant to Utah Code Ann. § 10-2-501 to disconnect a parcel of land that it owned containing approximately 5.05 acres located in the corporate limits of Sandy City. The five-acre parcel lies to the west of Interstate 15. The freeway separates the parcel from most of the rest of Sandy City, which lies to the east of the freeway.

Sandy City filed a motion to dismiss the complaint on the grounds that (1) the petition was facially defective because it was not signed by persons authorized by statute to sign it, (2) the petition was barred by res judicata, and (3) granting the petition would violate public policy. The trial court granted the motion to dismiss pursuant to a minute

order, but did not specify the ground or grounds it relied on for its decision. The order stated only that the complaint was dismissed for the reasons stated in Sandy City's memorandum in support of its motion.[1]

## I. THE DISCONNECTION STATUTE

■ At the time South Jordan filed its petition for disconnection, Utah Code Ann. § 10-2-502 stated:

If the district court finds *that the petition was signed by a majority of the registered voters of the territory concerned* and that the allegations of the petition are true and that justice and equity require the territory or any part thereof to be disconnected from the municipality, it shall appoint three disinterested persons as commissioners to determine (1) the liabilities of the municipality and territory to be disconnected which have accrued during the time in which the territory was part of the municipality; and (2) the mutual property rights of the municipality and the territory to be disconnected.

(Emphasis added.)

No registered voters reside in the area to be disconnected. The petition to disconnect was signed by the mayor of South Jordan for and on behalf of South Jordan. The petition alleged that South Jordan owned the parcel and that Sandy City provided no services to the parcel. It is undisputed that the petition was not signed by a majority of *registered voters* residing in the area to be disconnected, as required by the statute, but was signed by a majority of the *real property owners* of the area.

■ South Jordan City argues that this Court has held that the term "registered voter" in the statute means landowner. *In re Disconnection of Certain Territory from Highland City,* 668 P.2d 544 (Utah 1983). South Jordan is incorrect. In *Highland,* a petition was filed to disconnect some unoccupied territory from Highland City. The petition to disconnect was filed by landowners

who were not registered to vote in Highland City. The Court in the course of ruling on the only issue presented to it, i.e., whether the disconnection was required under the statutory "justice and equity" standard (see § 10-2-502), stated:

The first two requirements are undisputed: no registered voters (nor any other persons) reside in the territory concerned, the petitioners constitute all of the owners of the property in the territory and are therefore entitled to file a petition for disconnection, § 10-2-501, and the City does not challenge the district court's finding that the allegations in the petition are true. However, the City does contend that the district court erred in concluding that justice and equity require a disconnection.

668 P.2d at 546. The issue of whether landowners who are not voters in the municipality could file a petition for disconnection was not presented to the Court. Because the issue was not raised, the Court assumed that the petition was properly before the Court. To the extent that *Highland* can be read to allow a nonvoter to file a petition for disconnection under the statute, that reading is, at best, only dictum and not binding. In our view, the plain language of the statute must be accorded the meaning to which it is entitled.

South Jordan, however, argues that the true reading of § 10-2-502, notwithstanding the clear statutory language, was that a *majority of landowners* had to sign the petition. South Jordan asserts that a mistake was made in printing the enrolled copy of § 10-2-502 when that section was reenacted in 1977. According to South Jordan, the term "registered voters" was incorrectly substituted for the term "real property owners" and the latter term is the true requirement of the law. South Jordan seeks to show the "true" version of the law by relying on the affidavit of the sponsor of the bill enacted into law in 1977. The affidavit states that the language that should have appeared in the statute was

---

1. We note that Rule 52(a) of the Utah Rules of Civil Procedure provides that a trial court should state the ground or grounds on which a motion to dismiss is decided when more than one ground is asserted by the successful party. The

reason for that provision is to save an appellate court from having to address all the grounds asserted when the trial court's decision is based on fewer than all the asserted grounds.

"the majority of landowners" and not "the majority of registered voters." [2]

This Court cannot look behind the session laws of the state of Utah to determine what the legislature intended to enact into law; the session laws state the positive law and are conclusive as to what the law is. See *Lyman v. Martin*, 2 Utah 136, 141 (1877); Utah Const. art. VI, § 25.

Because the petition to disconnect was not signed by any registered voters, it was facially defective. Accordingly, we affirm the dismissal on that ground.

Nevertheless, we address the remaining issues raised in Sandy City's memorandum because they may arise again if South Jordan files a new petition to disconnect.

## II. RES JUDICATA

Sandy City contends that the petition to disconnect was barred by res judicata because South Jordan previously annexed a large tract of unincorporated territory on Sandy City's western border in 1979 and a lawsuit held the annexation valid. The plat map used for the annexation proceeding described a large tract that included the small parcel at issue in this case, even though the parcel was within Sandy City's boundaries. Sandy City petitioned the district court to declare the annexation void because it included land within Sandy City boundaries. South Jordan represented to the court that the inclusion of the 5.05-acre tract in the area to be annexed was a mistake and that South Jordan did not intend to annex any of Sandy City's property. On that understanding, the district court approved South Jordan's annexation of the unincorporated territory, minus the 5.05-acre tract, and that decision was affirmed by this Court on ap-

peal in *Sandy City v. City of South Jordan*, 652 P.2d 1316 (Utah 1982).

The contention that *Sandy City v. City of South Jordan* adjudicated the issue of South Jordan's right to disconnect the 5.05-acre parcel is without merit. The issue of whether South Jordan could disconnect the tract at issue was not adjudicated in that case, and there is no basis in any of the branches of res judicata for holding the present action barred. See *Madsen v. Borthick*, 769 P.2d 245, 247, 250 (Utah 1988); *see also Malone v. Parker*, 826 P.2d 132, 136 (Utah 1992) (issue preclusion); *Fitzgerald v. Corbett*, 793 P.2d 356, 359 (Utah 1990) (claim preclusion).

Sandy City also argues that South Jordan's petition for disconnection is estopped because South Jordan accepted the benefits of the prior adjudication. That argument is also without merit. See generally *Hess v. Seeger*, 55 Or.App. 746, 641 P.2d 23 (1981). There is no basis for an estoppel.

## III. PUBLIC POLICY

Sandy City contends that the district court correctly determined that the petition violated public policy. Specifically, Sandy City argues that Utah Code Ann. § 11-13-2, § 10-2-421, and § 10-9-302 indicate a legislative policy to prohibit cities from disconnecting land within the borders of another city without the concurrence of the other municipality. According to Sandy City, allowing South Jordan to disconnect property within Sandy City's borders contradicts the policies designed to accomplish cooperative resolution of municipal boundaries pursuant to those statutes. Sandy City also contends that a cooperative nonjudicial approach promotes sound urban planning policies and avoids intergovernmental conflict.

The statute providing for the disconnection of municipal land requires that a district

---

2. In 1993, the Legislature amended § 10-2-502. That amendment, effective May 3, 1993, reads:
   If the district court finds that the petition was signed by a majority of *the real property owners* of the territory concerned and that the allegations of the petition are true and that justice and equity require the territory or any part thereof to be disconnected from the municipality, it shall appoint three disinterested persons as commissioners to determine:

(1) the liabilities of the municipality and territory to be disconnected that have accrued during the time in which the territory was part of the municipality; and
(2) the mutual property rights of the municipality and the territory to be disconnected. (Emphasis added.)

court determine whether "justice and equity" require disconnection. Utah Code Ann. § 10–2–502. That standard requires a court to take into account all relevant factors pertaining to the appropriateness of a disconnection, and it is broad enough to require a court to consider general factors having to do with sound urban planning. Nevertheless, the district court in this case had no basis upon which such a determination could have been made because it would have required a factual investigation of the effect of the disconnection upon Sandy City and South Jordan. No such factual investigation was made because the case was decided on a motion to dismiss. Should South Jordan file a new petition under the 1993 disconnection statute, the trial court will no doubt take into account all relevant factors in determining whether disconnection is appropriate. To hold otherwise could result in a rule that would allow obstruction of sound urban planning policies by a municipality that, for reasons that have nothing to do with sound planning, refuses to cooperate.

In sum, neither res judicata nor public policy was a valid ground for dismissing the petition, but the defective petition to disconnect was.

Affirmed.

ZIMMERMAN, C.J., and DURHAM, J., and LEONARD H. RUSSON, Court of Appeals Judge, concur.

HALL, J., does not participate herein; LEONARD H. RUSSON, Court of Appeals Judge, sat prior to his appointment to the Court.

HOWE, Justice, concurring:

I concur. I write to point out that the requirement in section 10–2–502 that the petition for disconnection be signed by a majority of the registered voters conflicts with preceding section 10–2–501, which requires that the petition be signed by a majority of the real property owners. Obviously, an error was made in the enactment of this legislation in 1977. *See* 1977 Utah Laws ch. 48, §§ 1–2. I agree with plaintiff that the mistake is in section 10–2–502 because I do not believe that it was the intent of the legislature to deny the benefit of disconnection to a large class of property owners who do not reside on their property and therefore cannot be registered voters in the area sought to be disconnected.

Had the legislature not amended section 10–2–502 in 1993 to correct its error, I would hold that the requirement that the petition be signed by a majority of the registered voters could be dispensed with where there are no registered voters, as is true here. However, because the legislature has amended the law and South Jordan can re-petition under the amended law, there is no reason for the court to extend that far in this appeal.